**In re William Denis FUGAZY, Debtor.**

**Bankruptcy No. 90 B 20688.**

United States Bankruptcy Court,
S.D. New York.

Jan. 29, 1993.

Shea & Gould, New York City, Attorneys for Metromedia Co. and John W. Kluge.

Denise Savage, Cascone, Cole & Savage New York City, for debtor.

Marilyn Simon, New York City, for Roy D. Fugazy.

David J. Kaufmann, Kaufmann, Gilden & Carlin, New York City, Litigation Counsel for the Fugazy Children and Entities.

DECISION ON MOTION FOR AN OR-
DER AUTHORIZING COMMENCE-
MENT OF ACTION AGAINST DEBT-
OR

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

Metromedia Company ("Metro") and John W. Kluge ("Kluge"), creditors of the Chapter 11 debtor, William Denis Fugazy, have moved pursuant to 11 U.S.C. §§ 1103(c)(5) and 1109(b) for an order authorizing them to prosecute certain claims, at their own cost and expense, on behalf of

the debtor's estate. Metro and Kluge seek permission to commence an adversary proceeding on behalf of the debtor against his children and against entities owned by his children. The proposed adversary proceeding would seek to avoid allegedly unlawful transfers of the debtor's property made by the debtor to companies owned by his children and to pierce the corporate veil of certain entities on the ground that they are alter egos of the debtor in order to compel these companies to turn over to the debtor's estate all assets belonging to them. The movants maintain that the debtor will not bring the proposed action against his children and companies controlled by them. Therefore, the movants reason that demand upon the debtor to commence such a proceeding would be a futile gesture.

## FACTUAL BACKGROUND

The debtor filed with this court his petition for relief under Chapter 11 of the Bankruptcy Code on July 16, 1990 and continued in possession of his property as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108. To date, no creditors' committee or trustee has been appointed.

Metro and Kluge hold the largest combined claims against the debtor's estate. On June 6, 1990, a jury verdict was entered against the debtor and in favor of the movants in the United States District Court for the Southern District of New York. The jury found that the debtor had committed securities fraud in violation of Section 12(2) of the Securities Act and had committed civil violations of the RICO Act through acts of mail fraud, wire fraud, securities fraud and bankruptcy fraud. On December 5, 1990, a judgment was entered in the Southern District of New York in favor of Metro and against the debtor in the sum of $46,661,792.67. On December 17, 1992, the Second Circuit Court of Appeals unanimously affirmed the judgment. *Metromedia Co. v. Fugazy*, 983 F.2d 350 (2d Cir. 1992). Metromedia also holds a judgment for $3,246,281.51 against the debtor which was entered in the New York Supreme Court. Additionally, in 1990, Kluge obtained a judgment against the debtor in the

United States District Court for the Southern District of New York in the amount of $154,374.15.

The movants contend that the debtor defrauded his creditors by funnelling money through his children's companies and then by treating those companies as one large fund from which he paid whatever expenses he incurred, regardless of whether the debtor was employed by the company or had any formal relationship with such company. The movants contend that since 1986 or 1987, the debtor embarked upon a full-scale scheme to defraud his creditors and to become "judgment proof." The movants allege that in furtherance of this scheme, the debtor arranged to convey all assets owned by him to corporations which he dominated or controlled, but which were nominally owned by his children. The movants further assert that the debtor then arranged to be employed by some of these companies at a nominal salary and had all his personal living expenses paid for by these companies.

In their papers in support of the motion, the movants state that the debtor resides in a luxurious apartment on the east side of Manhattan and spends his weekends on a farm in Pine Plains, New York, where he is served by a cook, a housekeeper and a secretary. The debtor's primary residence is a home in Harrison, New York, owned by the debtor's wife, which has athletic facilities and other amenities. He has the use of a leased chauffeur-driven limousine on a daily basis. The debtor maintains active memberships or accounts in the New York Athletic Club, Winged Foot Country Club, the Metropolitan Club, Deepdale Country Club, the Westchester Country Club, Columbus Citizens House, Inc., Tiro A Segno of New York, Inc., Patsy's Italian Restaurant, Nicola's Restaurant, Jim McMullen's Restaurant and the Encoteca Iperbole Wine Library Restaurant.

The debtor's operating reports filed in this case reflect that he earns approximately $4,500.00 per month and spends approximately $3,300.00 per month. The debtor's liabilities exceed $60,000,000.00.

The debtor asserts that the various companies referred to by the movants are not his alter egos and that they have separate identities, functions and businesses. The debtor further alleges that the corporate formalities were observed and that with the exception of Travelco, Inc. ("Travelco") and Fugazy International Franchise Corp. ("Franchise"), the corporations were always owned by the debtor's children and others. The debtor states that he is only an employee of Franchise and DJR & Associates, Inc. ("DJR"). The corporations named by the movants are as follows:

Fugazy International Corporation
Travelco, Inc.
Fugazy Travel & Incentive Corp.
Fugazy International Franchise Corp.
Fugazy Limousine, Ltd.
Fugazy International Travel
Fugazy Island Helicopter
Fugazy Leasing
DJR & Associates, Inc.
Daywill and Company, Inc.
JCF Associates

In an effort to resolve this conflict, the debtor has filed a motion, returnable in this court on March 10, 1993, pursuant to which a settlement is proposed between the debtor, his children and certain Fugazy entities. The settlement proposes:

a. Franchise will assign to the debtor's estate a lien from a confession of judgment made by Travelco in favor of Franchise with respect to the farm in Pine Plains, New York.

b. Franchise will transfer to the debtor's estate its 100% interest in a condominium at the Jockey Club in Dade County, Florida.

c. The Fugazy children will pay to Kluge an amount sufficient to satisfy his third lien against the farm in Pine Plains,

New York, which approximates $209,-000.00, plus accrued interest.

d. The Fugazy children will pay to the debtor's estate the sum of $100,-000.00.

e. The debtor and the parties to the settlement are to exchange mutual releases which will also be binding on all of the debtor's creditors.

The debtor asserts that the proposed settlement places the debtor's estate in a better position than if the subject transfers were avoided.

## DISCUSSION

■ The authority to commence and pursue an action on behalf of a Chapter 11 debtor's estate is not expressly authorized under 11 U.S.C. § 1103(c)(5) [1] which simply permits official creditors' committees to perform such services as are in the interest of those represented. Additionally, 11 U.S.C. § 1109(b) [2] states that a creditors' committee or a creditor may raise and appear and be heard on any issue in the case. However, a creditors' committee may have an implied right to initiate a suit on behalf of the debtor's estate, with court approval, if the debtor is unwilling to do so, where the claim is colorable and the action is likely to benefit the estate. *Unsecured Creditors Committee v. Noyes (In re STN Enterprises)*, 779 F.2d 901 (2d Cir.1985). Under similar circumstances, a single creditor might obtain court approval to proceed on behalf of the estate. *In re New York International Hostel, Inc.*, 142 B.R. 90, 95 (Bankr.S.D.N.Y.1992).

■ In the instant case, the key issue to be determined is the measure of benefit to the estate. The movants seek to bring into the estate assets of corporations which the debtor alleges are undercapitalized and

---

1. **11 U.S.C. § 1103. Powers and duties of committees.**

   .    .    .    .    .

   (c) A committee appointed under section 1102 of this title may—

   .    .    .    .    .

   (5) perform such other services as are in the interest of those represented.
   11 U.S.C. § 1103(c)(5).

2. **§ 1109. Right to be heard.**

   .    .    .    .    .

   (b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear to be heard on any issue in a case under this chapter.
   11 U.S.C. § 1109(b).

will not produce any benefits for creditors, whereas the debtor contends that the proposed settlement will produce positive benefits for the estate and will outweigh the costs that will be incurred if the movants are authorized to proceed with their litigation. Before a proposed settlement is approved by the court, there must be a showing that the compromise and settlement is in the best interest of the estate. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968); *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 298 (5th Cir.), *cert. denied*, 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 182 (1984); *In re Texaco Inc.*, 84 B.R. 893, 901 (Bankr.S.D.N.Y.), *appeal dismissed*, 92 B.R. 38, (S.D.N.Y.1988). The proposed settlement must be found to be reasonably equivalent to the value of the potential claim which would be surrendered as a result of the settlement. *Barry v. Smith (In re New York, New Haven and Hartford Railroad Co.)*, 632 F.2d 955, 960 (2d Cir.), *cert. denied*, 449 U.S. 1062, 101 S.Ct. 786, 66 L.Ed.2d 605 (1980). Any approval of a settlement must issue from reason and rest upon factual undergirdings. *AWECO*, 725 F.2d at 300. The factors to be considered in reviewing a proposed settlement are:

(1) The balance between the likelihood of the plaintiffs' or the defendant's success should the case go to trial as compared with the benefits of the settlement without the expense and delay of a trial.

(2) The prospect of complex and protracted litigation if the settlement is not approved.

(3) The proportion of the creditors who do not object or who affirmatively support the proposed settlement.

(4) The relative benefits to be received.

(5) The nature and breadth of releases to be issued as a result of the settlement.

(6) The extent to which the settlement is truly the product of arms length bargaining and not the product of fraud or collusion.

*See Texaco*, 84 B.R. at 902.

▪ It appears that the court should permit a full hearing as to the merits of the proposed settlement before the movants are allowed to commence litigation which would be mooted if the settlement is approved. Obviously, the movants should be authorized to have discovery as to the settlement issues pursuant to Federal Rule of Bankruptcy Procedure 9014. However, the movants should not duplicate the discovery they have already obtained pursuant to Federal Rule of Bankruptcy Procedure 2004. In the event that the proposed settlement is not approved, the movants may then renew their motion for permission to commence the proposed action for the benefit of the estate.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the subject matter and the parties in accordance with 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A), (E) and (H).

2. The movants' motion for authorization to commence an action against the debtor's children and certain corporations owned by them is denied, without prejudice to renewal after the court has considered the proposed settlement scheduled for March 10, 1993.

3. The movants may have discovery, as made available under the Federal Rule of Bankruptcy Procedure 9014, as to all issues relevant to the proposed settlement. However, the movants shall not duplicate the discovery already obtained pursuant to Federal Rule of Bankruptcy Procedure 2004.

SETTLE ORDER on notice.